UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FUTURE WORLD ELECTRONICS, LLC | CIVIL ACTION |
| VERSUS | NO. 17-17982 |
| RESULTS HQ, LLC ET AL. | SECTION "R" (5) |

## ORDER AND REASONS

Defendants move to dismiss the complaint for lack of personal jurisdiction.[1] For the following reasons, the Court grants the motion.

## I. BACKGROUND

Defendant Results HQ, LLC and plaintiff Future World Electronics, LLC are both in the automotive direct mail industry.[2] Plaintiff designs, brands, and licenses advertising templates for use in direct mail campaigns.[3] Each template has its own distinctive theme, such as Payment Swap, Payment Challenge, New Year's Clearing House, and Massive Liquidation.[4]

---

1     R. Doc. 8.
2     R. Doc. 1 at 2-3 ¶¶ 8-9.
3     *Id.* at 3 ¶ 10.
4     *Id.*

Plaintiff licenses its templates to Your Preferred Printer, LLC (YPP), which is based in Louisiana.[5]

Results HQ, which is based in Texas, allegedly developed a business relationship with YPP.[6] In connection with this relationship, defendants Bob Shows and Blaine Harris (who are Results HQ's cofounders and Texas residents) allegedly visited YPP's facility in Louisiana four to six times over the course of several years.[7] Plaintiff further alleges that through this business relationship, Results HQ obtained digital copies of plaintiff's templates by accessing a computer server located in Louisiana.[8] At some point, Results HQ allegedly terminated its business relationship with YPP.[9] According to plaintiff, Results HQ then produced, printed, and distributed direct mail advertisements substantially similar to plaintiff's works.[10]

Plaintiff sued defendants on December 29, 2017, for copyright infringement, trademark infringement, and trademark dilution. Defendants now move to dismiss the complaint for lack of personal jurisdiction.[11]

---

[5] *Id.* at 2 ¶ 8.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.* at 5 ¶ 19.
[10] *Id.* at 6-7 ¶¶ 21-28.
[11] R. Doc. 8.

## II. LEGAL STANDARD

Personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (internal quotation marks and citation omitted). A district court may exercise personal jurisdiction over a defendant if "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Because Louisiana's long-arm statute, La. R.S. § 13:3201, extends jurisdiction to the limits of due process, the Court need only consider whether the exercise of jurisdiction in this case satisfies federal due process requirements. *Dickson Mar. Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999).

Personal jurisdiction may be either general or specific. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). General jurisdiction over a foreign defendant exists if the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The Fifth Circuit has articulated a

3

three-step inquiry to determine whether specific jurisdiction exists. *Seiferth*, 472 F.3d at 271. First, the plaintiff must show that "the defendant has minimum contacts with the forum state, *i.e.*, . . . it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Id.* Second, the plaintiff must show that his "cause of action arises out of or results from the defendant's forum-related contacts." *Id.* If the plaintiff makes these showings, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Id.*

When the district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). But the district court is not required "to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

## III. DISCUSSION

Plaintiff asserts that defendants are subject to specific personal jurisdiction in Louisiana. According to plaintiff, Results HQ "used its business relationships in Louisiana (including, without limitation, travelling to Louisiana on multiple occasion) to access computers in Louisiana, thereby enabling [Results HQ's] copyright and trademark infringement."[12] Access is one element of plaintiff's copyright infringement claim, though it is irrelevant to plaintiff's trademark infringement and trademark dilution claims. To establish copyright infringement, a plaintiff must show "factual copying." *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1037 (5th Cir. 2015). "[F]actual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Id.* (quoting *Positive Black Talk Inc. v. Cash Money Records Inc.*, 394 F.3d 357, 368 (5th Cir. 2004)). Access means that the defendant "had 'a reasonably opportunity to view'" the copyrighted work. *Id.* (quoting *Armour v. Knowles*, 512 F.3d 147, 152-53 (5th Cir. 2007)).

"In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy,

---

[12]  R. Doc. 1 at 3 ¶ 8.

5

principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "A single purposeful contact may confer jurisdiction." *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 n.3 (5th Cir. 2006); *see also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999). But a defendant's contacts with a forum state will not result in specific jurisdiction if such contacts are "random, fortuitous, or attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985).

Plaintiff fails to establish specific jurisdiction over defendants in Louisiana. Importantly, plaintiff does not allege that any of defendants' allegedly unlawful acts took place in Louisiana. Instead, plaintiff relies on defendants' business relationship with Louisiana-based YPP. This relationship purportedly allowed Shows and Harris to visit YPP's printing facility in Louisiana, and gave Results HQ's "access to an FTP computer server located in Louisiana . . . through which [it] obtained copies of much of Future World's Digital Portfolio."[13] Plaintiff also points to a promotional video prepared by Results HQ, which includes footage of Shows at YPP's

---

[13] *Id.*; *see also* R. Doc. 9 at 9.

6

facility and shows other Results HQ employees allegedly working with plaintiff's digital templates.

A defendant's business activities in a state may provide the necessary connection to that state. When a defendant avails itself of the privilege of conducting business in a state by deliberately engaging in significant activities therein, its "activities are shielded by the benefits and protections of the forum's laws [and] it is presumptively not unreasonable to require [it] to submit to the burdens of litigation in that forum as well." *Rudzewicz*, 471 U.S. at 475-76 (internal quotation marks and citations omitted). In *Rudzewicz*, for example, the Supreme Court addressed whether a Florida federal court had specific jurisdiction over a contract claim against a Michigan-based Burger King franchise. The Court held that there was specific jurisdiction in light of the franchisee's "voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters." *Id.* at 480. The Court also emphasized that the Miami headquarters of the franchisor "made the key negotiating decisions out of which the instant litigation arose." *Id.* at 481. The Court concluded that "the quality and nature of [the franchisee's] relationship to the company in Florida can in no sense be viewed as random, fortuitous, or attenuated." *Id.* at 480 (internal quotation marks and citations omitted).

7

Defendants' purported business activities in Louisiana were far more limited. First, Results HQ contracted with YPP to print direct mail materials. But "merely contracting with a resident of the forum state does not establish minimum contacts." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)). Second, Shows and Harris visited YPP's facility four to six times over the course of several years. But plaintiff does not allege that the purpose of these visits was to access plaintiff's intellectual property, or that the visits facilitated defendants' copyright or trademark infringement. Moreover, the Fifth Circuit has held that a defendant's physical visit to the forum state in connection with his business activities therein is "relevant," but not "sufficient to alter the basic quality and nature of" the defendant's contacts with the state. *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983); *see also Moncrief*, 481 F.3d at 313 (citing *Hydrokinetics*).

The conduct most relevant to plaintiff's claims is Results HQ's repeated access of a computer server located in Louisiana during the course of its business relationship with YPP. Plaintiff alleges that this access allowed defendants to obtain copies of plaintiff's digital portfolio.[14] But plaintiff fails

---

14   R. Doc. 1 at 3 ¶ 8.

to allege that defendants were not entitled to access the server under the terms of defendants' business relationship with YPP.

As several district courts have held, a plaintiff may not "rely on the fortuitous location" of a server to establish personal jurisdiction over a defendant who accessed that server. *Chang v. Virgin Mobile USA, LLC*, No. 07-1767, 2009 WL 111570, at *3 (N.D. Tex. Jan. 16, 2009); *see also Ray v. Experian*, No. 07-1114, 2007 WL 4245459, at *3 (N.D. Tex. Nov. 30, 2007) ("[A]ccessing or sending data in North Carolina to or from a database which happens to be headquartered in Texas is not a purposeful availment by [defendant] of the benefits and protections of Texas' laws."). Some courts have found specific jurisdiction over a defendant who accessed a server located in the forum state, but only because the access itself was wrongful. *See, e.g., MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012); *Rhapsody Sols., LLC v. Cryogenic Vessel Alternatives, Inc.*, No. 12-1168, 2013 WL 820589, at *5 (S.D. Tex. Mar. 5, 2013); *Watch Sys. LLC v. Sys. Design Sols., Inc.*, No. 09-5821, 2009 WL 5217085, at *6 (E.D. La. Dec. 31, 2009); *Abatix Corp. v. Capra*, No. 07-541, 2008 WL 4427285, at *3 (E.D. Tex. Sept. 24, 2008).

These holdings accord with the general principle that communication to a resident of the forum state generally does not establish minimum

9

contacts with that state, unless the communication itself is tortious. In *Holt Oil & Gas v. Harvey*, 801 F.2d 773 (5th Cir. 1986), for example, the Fifth Circuit held that the defendant's communications directed to the forum state did not constitute purposeful availment because these communications "rested on nothing but 'the mere fortuity that [the plaintiff] happens to be a resident of the forum.'" *Id.* at 778 (quoting *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985)). In *Wien Air Alaska*, by contrast, the Fifth Circuit held that "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." 195 F.3d at 213.

Here, the location of the server in Louisiana was fortuitous. There is no indication that either plaintiff or defendants had any control over the server's location, or that the location had any bearing on defendants' conduct. *Cf. DEX Sys., Inc. v. Deutsche Post AG*, 2018 WL 1280917, at *2 (9th Cir. Mar. 13, 2018) (noting that location of "server was not merely a fortuitous occurrence" because "the software was located on California servers pursuant to an agreement reached by the parties"). Moreover, the allegedly wrongful conduct relied on by plaintiff's complaint is not defendants' acquisition of plaintiff's intellectual property, but rather defendants' subsequent use of this intellectual property. Such use occurred

in Texas, not Louisiana.[15]  There is no allegation that defendants' access of the server was itself tortious, such that the access alone constituted purposeful availment.  *Cf. Wien Air Alaska*, 195 F.3d at 213.  Thus, defendants do not have minimum contacts with Louisiana merely because they accessed a server that happened to be located in the state.

The cases cited by plaintiff are both nonbinding and distinguishable. In *Tayama v. Riom Corp.*, No. 11-167, 2012 WL 556007 (N.D. Tex. Feb. 21, 2012), the case that most strongly supports plaintiff's position, the defendant visited the plaintiff's steakhouse in the Northern District of Texas and acquired details about its design.  The defendant then allegedly used those details in designing its own steakhouse in the Western District of Texas.  The plaintiff sued for copyright infringement in the Northern District.  The court held that the defendant's visit to the plaintiff's steakhouse was a sufficient contact to establish specific jurisdiction, noting that "[a]ccess to copyrighted material is an element to a cause of action for copyright infringement." *Id.* at *4. But physically visiting a restaurant and examining its design details in person are far more significant contacts than merely accessing a server. Moreover, the defendant's visit to the Northern District of Texas in *Tayama* was not fortuitous: the restaurant whose design details the defendant

---

15    *See* R. Doc. 1 at 6 ¶ 22.

allegedly copied was located there. For these reasons, the Court declines to follow *Tayama* in this case.

The other cases cited by plaintiff, both involving contract and copyright infringement claims, are similarly unavailing. In *CoStar Realty Information, Inc. v. Meissner*, 604 F. Supp. 2d 757 (D. Md. 2009), the district court found minimum contacts in Maryland based on the following business activities: the defendant entered into a licensing agreement with the Maryland-based plaintiffs, sent emails to and called the plaintiffs by phone, and "repeatedly accessed Plaintiffs' Maryland-based servers." *Id.* at 766. Again, these contacts were more significant than defendants' contacts in this case. Additionally, the defendants in *CoStar Realty* had a business relationship with the plaintiff centered in the forum state, while defendants in this case had a business relationship only with YPP. The final case cited by plaintiff, *Scentsy, Inc. v. Performance Mfg., Inc.*, No. 08-553, 2009 WL 320334 (D. Idaho Feb. 9, 2009), found personal jurisdiction in part because of the defendants' visit to the plaintiff's facility in the forum state. But the court analyzed specific jurisdiction under a different theory—the effects test set forth in *Calder v. Jones*, 465 U.S. 783 (1984). *Scentsy*, 2009 WL 320334, at *4. Plaintiff does not argue this theory, and the Court does not address it.

In summary, none of defendants' allegedly wrongful acts took place in Louisiana; defendants' business activities in the state were not significant; and the location of the server that defendants accessed was fortuitous. Together, Results HQ's business relationship with YPP, Shows's and Harris's visits to YPP's facility, and defendants' access of a server that happened to be located in Louisiana do not establish minimum contacts with the state. Plaintiff therefore fails to show that defendants purposefully availed themselves of Louisiana law, and personal jurisdiction is lacking.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED. Plaintiff's complaint is DISMISSED.

New Orleans, Louisiana, this __29th__ day of May, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE